In re GENESIS HEALTH VENTURES, INC., et al., Debtors.

In re Multicare AMC, Inc., et al., Debtors.

Charles L. Grimes, Appellant,

v.

Genesis Health Ventures, Inc., et al., Appellees.

Charles L. Grimes, Appellant,

v.

Multicare AMC, Inc., et al., Appellee.

Bankruptcy Nos. 00–2692–JHW, 00–2494–JHW. CIV.A. Nos. 02–103–JJF, CIV.A. 01–734–JJF.

United States District Court, D. Delaware.

June 14, 2002.

340

David A. Jenkins, Esquire and Michele
C. Gott, Esquire of Smith Katzenstein &

Furlow LLP, Wilmington, Delaware, for Appellant.

Mark D. Collins, Esquire, Russell C. Silberglied, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware, Of Counsel Michael F. Walsh, Esquire, Gary T. Holtzer, Esquire of Weil, Gotshal & Manges LLP, New York City, Adam P. Strochak, Esquire and Jeffrey L. Cimbalo, Esquire of Weil, Gotshal & Manges LLP, Washington, D.C., for Appellees Reorganized Debtors Genesis Health Ventures, Inc., et al.

Robert S. Brady, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, Of Counsel Paul V. Shalhoub, Esquire of Willkie Farr & Gallagher, New York City, for Appellees/Reorganized Debtors Multicare AMC, Inc., et al.

Teresa K.D. Currier, Esquire of Klett Rooney Lieber & Schorling, Wilmington, Delaware, Of Counsel Menachem O. Zelmanovitz, Esquire of Morgan, Lewis & Bockius LLP, New York, City, for Appellees Melon Bank, N.A., as Agent for the prepetition Senior Lenders and the First Union National Bank as Agent for the Exit Lenders.

### MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is a Joint Motion To Dismiss The Appeal (D.I.12) filed by Appellees, Genesis Health Ventures Inc. ("Genesis") and its affiliated co-debtors, Multicare AMC, Inc. and its affiliated co-debtors ("Multicare"), Mellon Bank, N.A., as agent for the prepetition senior secured lenders of Genesis and Multicare, and First Union National Bank, as agent for the exit financing lenders.[1] For

the reasons set forth below, Appellees' Joint Motion will be granted.

### BACKGROUND

#### I. Procedural Background

On June 22, 2000, Genesis and Multicare (collectively "the Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are providers of healthcare and support services to the elderly. Appellant, Charles L. Grimes, was the holder of approximately $20,000,000 in face amount of 9 3/4% Senior Subordinated Notes issued by Genesis and due in 2005. As such, Appellant was an unsecured creditor of the Debtors.

Approximately one year after filing their Petition, the Debtors proposed a plan of reorganization (the "Plan") that provided for the payment of claims primarily through the distribution of securities in the reorganized entity. In negotiating the Plan, the Debtors contend that it became clear that their enterprise value would not be sufficient to provide full recovery to the Genesis Senior Lenders and the Multicare Senior Lenders (collectively, the "Senior Secured Lenders"). Applying the absolute priority rule, the Debtors contend that there would have been no value available to distribute to the Debtors' unsecured creditors. To avoid delaying the reorganization and to prompt a consensus among the creditors, the Senior Secured Lenders agreed to allocate a portion of their recovery to the unsecured creditors.

Pursuant to this compromise, the Plan provided for Multicare to merge into Genesis, creating the Reorganized Genesis. The Debtors would then issue 41 million new common shares in the Reorganized Genesis and warrants to purchase another

1. Docket Item numbers referenced correspond to the Lead Case in this consolidated action, Civil Action 01–734–JJF.

4.5 million shares. The Senior Secured Lenders would receive 30,485,0790 shares of the new common stock, plus convertible preferred stock and cash. The unsecured creditors would receive 1,689,147 new common shares and warrants to purchase more than 2.8 million additional common shares.

Under the terms of the Plan, Appellant became the holder of a Class G5 Senior Subordinated Note Claim. Appellant objected to the Plan on the grounds that the Plan failed to conform to the requirements of Section 1129(b) of the Bankruptcy Code. Specifically, Appellant argued that the Plan provided more than 100% recovery to the Senior Secured Lenders while the Class G5 Noteholders only received pennies on the dollar for their claims. Appellant contended that this disproportionate recovery resulted from the Debtors' use of incorrect methodologies which materially understated the enterprise value of the Reorganized Genesis and the securities issued to the Senior Secured Lenders under the Plan.

A two-day confirmation hearing was held on the Debtors' Plan. The Bankruptcy Court heard the testimony of six valuation experts and admitted into evidence reports from each expert. The Bankruptcy Court accepted the valuation conclusions of the Debtors' experts and concluded that the Debtors were in fact solvent. The Bankruptcy Court further found that the Plan did not provide for more than a 100% recovery for the Senior Secured Lenders.

Two days later, Appellant filed a motion to amend the findings of the Bankruptcy Court concerning the valuation of the Reorganized Genesis. On September 20, 2001, before ruling on Appellant's motion, the Bankruptcy Court entered an order confirming the Debtors' Plan.

On September 24, 2001, Appellant appealed from the Confirmation Order. Appellant did not promptly seek a stay of the Confirmation Order pending his appeal, even though the Plan provided that distributions "shall be made on the Effective Date or as soon thereafter as is practicable." (D.I. 14, Ex. A, Plan § 6.2 at 24).

On October 2, 2001, the Debtors' Plan became effective. The Debtors closed their exit financing and made the requisite distributions to their creditors.

On October 5, 2001, the Bankruptcy Court held a hearing on Appellant's motion to amend and orally denied the motion. Appellant subsequently appealed the Bankruptcy Court's denial of his motion.

On October 11, 2001, Appellant moved the Bankruptcy Court for a partial stay of the Confirmation Order pending appeal. Appellant sought to prevent the Debtors from distributing 10% of the total amount of stock to be distributed to the Senior Secured Lenders under the Plan. By that time, however, the Reorganized Genesis had distributed 100 percent of the stock allocated to the Senior Secured Lenders under the Plan. In addition, the Debtors made significant distributions of stock and warrants to the unsecured creditors, including Appellant. Accordingly, the Bankruptcy Court denied as moot Appellant's motion for a stay.

By the instant Motion, Appellees seek to dismiss Appellant's appeal on the grounds of equitable mootness. Appellees contend that dismissal is appropriate, because the relief Appellant seeks would result in an "unscrambling" of the Debtors' substantially consummated Plan. Appellant has filed a response opposing the Debtors' Motion and urging the Court to allow this appeal to proceed to the merits of whether the Bankruptcy Court erred in accepting the Debtors' valuation of the Reorganized Genesis. Appellees have filed their Reply

Brief, and accordingly, this matter is fully briefed and ripe for the Court's review.

## DISCUSSION

### I. Legal Standard For The Doctrine Of Equitable Mootness

■■ Under the doctrine of equitable mootness, "[a]n appeal should . . . be dismissed as moot, even though effective relief could conceivably be fashioned, where implementation of that relief would be inequitable." *In re Continental Airlines*, 91 F.3d 553, 559 (3d Cir.1996) (en banc). The equitable mootness doctrine is aimed at "prevent[ing] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." *Nordhoff Investments, Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir.2001). As adopted by the Third Circuit in *Continental*, the doctrine of equitable mootness requires the court to balance five factors which are unique to bankruptcy proceedings:

(1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality to bankruptcy judgments.

*Continental*, 91 F.3d at 560. The manner in which these factors are weighed depends on the facts and circumstances of each case. *Id.*

### II. Whether Appellant's Appeal Should Be Dismissed On The Grounds Of Equitable Mootness

■■ After weighing the factors relevant to the doctrine of equitable mootness in light of the circumstances of this case, the Court concludes that the instant appeal should be dismissed on the grounds of equitable mootness. In reaching this conclusion, the Court analyzes the relevant factors as follows:

### A. *Substantial Consummation Of The Plan*

■■ In determining whether an appeal should be dismissed on the grounds of equitable mootness, "the foremost consideration is whether the reorganization plan has been substantially consummated." *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir.2000). In this case, Appellant concedes that the Plan has been substantially consummated. (D.I. 17 at 10). Accordingly, the Court finds that this factor weighs heavily in favor of dismissing the instant action.

### B. *Obtaining A Stay*

In the context of bankruptcy confirmations, the Third Circuit has held that

'[I]t is obligatory upon appellant . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief . . .), if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.'

*Zenith*, 258 F.3d 180, 185 (3d Cir.2001) (quoting *In re Highway Truck Drivers & Helpers Local Union # 107*, 888 F.2d 293, 297 (3d Cir.1989)); *see also Continental*, 91 F.3d at 566 (stating that it was "incumbent" on appellants to obtain a stay where there was a "clear possibility" that their claims would become moot"); *In re Chateaugay Corp.*, 988 F.2d 322, 326 (2d Cir. 1993) (recognizing that "the party who appeals without seeking to avail himself of that [stay] protection does so at his own risk").

■ In this case, Appellant did not promptly seek a stay of the Bankruptcy Court's confirmation order or the effective date of the Plan. More than nine days after the effective date of the Plan, Appellant sought a partial stay of the Confirmation Order. In seeking the partial stay, Appellant recognized that the failure to obtain a stay could result in the dismissal of his appeal on the grounds of equitable mootness. (D.I. 14, Ex. F at 6–7). However, Appellant's motion for a partial stay was moot by the time he filed it, because the distributions he sought to prevent had already been made. As the Third Circuit recognized in *Continental*, "[e]ven the seeking of a stay may not be enough." 91 F.3d at 562. Where a stay is sought and denied, or as in this case, a stay is sought but is moot, the end result is the same, the implementation of the plan of reorganization. *Id.* (quoting *In re UNR Industries*, 20 F.3d 766, 769 (7th Cir.), *cert. denied*, 513 U.S. 999, 115 S.Ct. 509, 130 L.Ed.2d 416 (1994)). Accordingly, Appellant's failure to obtain a stay weighs in favor of dismissing his appeal. *Continental*, 91 F.3d at 562.

Appellant contends, however, that it was not necessary for him to obtain a stay, because the relief he seeks would not require unraveling the Debtors' substantially consummated Plan. The Court disagrees with Appellant's argument. Appellant initially sought to hold back 10% of the shares disbursed to the Senior Secured Lenders. To preserve this remedy, Appellant should have promptly sought a stay of the Confirmation Order or the effective date of the Plan.

In lieu of the 10% hold back, Appellant now requests the Court to require the Reorganized Genesis to issue him additional shares of common stock. This remedy, however, is no different than the initial remedy he sought for purposes of determining whether Appellant should have sought a stay. The common shares of the Reorganized Genesis have already been disbursed to the Senior Secured Lenders and public trading of those shares has since commenced. The relief Appellant seeks would have a *direct impact* on this already consummated distribution. As such, it was incumbent upon Appellant to seek a stay before that distribution happened.[2]

In this case, Appellant waited to seek a partial stay until the distribution he sought to affect had already been made. Appellant's delay effectively rendered his request for a stay moot and resulted in the failure to preserve his remedies. Further, Appellant offers no reasonable justification to excuse his delay.[3] Accordingly, in these circumstances, the Court finds that Appellant's failure to timely obtain a stay weighs in favor of dismissing his appeal.

## C. The Rights Of Parties Not Before The Court

■ The reliance of third parties on the finality of the transaction is "[h]igh on the

---

**2.** Appellant suggests that the impact of not obtaining a stay is lessened in this case, because Debtors' counsel knew he would be appealing the Confirmation Order. *See In re S.S. Retail Stores*, 216 F.3d 882, 884 (9th Cir.2000). Even accepting Appellant's argument that this factor should receive less weight, the Court would conclude that Appellant's appeal should be dismissed on the grounds of equitable mootness. On balance, the remaining factors weigh in favor of dismissing the appeal, and Appellant's failure to obtain a stay, though not dispositive, is not irrelevant.

**3.** Appellant's only justification for failing to timely obtain a stay was his belief that a stay was not necessary. Given that the relief Appellant sought would have a direct impact on the distribution to be made on the effective date of the Plan, the Court cannot accept Appellant's position that a stay was unnecessary.

list of prudential considerations taken into account by courts considering whether to allow an appeal following a consummated reorganization ...." *Continental*, 91 F.3d at 562. Public policy favors enabling a debtor to maximize its estate and successfully reorganize. *Id.* at 565. This public policy weighs in favor of encouraging third parties, particularly investors, to rely on the finality of reorganizations, because the participation of these third parties in the formerly bankrupt entity enhances the prospects for a successful reorganization.

In this case, both the Exit Lenders and Senior Secured Lenders relied upon the finality of the Confirmation Order in extending exit financing to the Debtors. Had the Confirmation Order been stayed and the distribution to the Senior Secured Lenders' delayed, the Exit Lenders, who included some Senior Secured Lenders, would not have closed and the Debtors would not have been able to obtain their exit financing.

Appellant contends that the Exit Lenders and Senior Secured Lenders are parties before the Court, and thus, their reliance on the finality of the confirmation Order should not be considered. The Court disagrees. Although the agents of the Exit Lenders and the Senior Secured Lenders are before the Court, the actual lenders are not and the agents may not be able to bind the lenders they represent in all respects as a result of the terms of their respective credit agreements.[4]

Further, even if these lenders are before the Court such that their interests should not be considered in the context of this factor, there are other third parties whose rights would be adversely affected by the relief Appellant seeks. The shares of the Reorganized Genesis have been traded on the over-the-counter "Bulletin Board" market since the effective date of the Plan. Between October 10, 2001 and November 28, 2001 more than 1,800,000 shares of the reorganized debtor were traded. (D.I.14, Ex. G). The rights of these third party investors would be directly affected by the relief Appellant seeks, because the distribution of additional shares to Appellant would result in the dilution of the shares these investors currently hold.

Appellant contends that these investors cannot legitimately claim that they would be harmed by a dilution in their stock, because they could have found out that Appellant was appealing this matter. The Court disagrees that notice of an appeal alone is sufficient to undercut the reliance of third party investors on the substantial consummation of the Plan in these circumstances. Indeed, in this case, Appellant initially sought a 10% hold back of the stock distributed to the Senior Secured Lenders and a redistribution of those shares to him. Such relief would not have affected the total number of shares distributed by the Reorganized Genesis. For purposes of this appeal, however, Appellant requests the Reorganized Genesis to issue him additional shares of stock. The Court cannot conclude that Appellant's notice of appeal would have been sufficient to caution investors of this prospect. Further, to conclude that the investors would not be harmed in these circumstances would be to charge these investors, whose reliance should be encouraged, with the duty of following Appellant's appeal and understanding the legal contours of the parties' respective positions. In the Court's view, this type of knowledge ex-

---

4. Further, these circumstances are relevant to another consideration, i.e. the public policy favoring the finality of bankruptcy judgments. Thus, the reliance of these entities, whether before the Court or not, is a relevant consideration which weighs in favor of dismissing this appeal.

tends beyond that which should be expected by a reasonable investor and undercuts the public policies favoring the finality of bankruptcy judgments and the reliance of investors on such judgments. Because the Exit Lenders and Senior Secured Lenders were entitled to rely on the substantially consummated Plan and because the rights of third party investors would be adversely affected by the relief Appellant seeks, the Court finds that this factor also weighs in favor of dismissing Appellant's appeal.

### D. *The Success Of The Plan*

■ If the relief an appellant requests has an "integral nexus" with the reorganization plan such that it would cause the "reversal or unraveling" of the plan, then dismissal of the appellant's appeal on the grounds of equitable mootness is favored. *In re Trans World Airlines, Inc.*, 2002 WL 500569 *2 (D.Del. Mar. 26, 2002) (citing *PWS Holding Corp.*, 228 F.3d at 236). Appellant contends that issuing additional shares of stock to him would not result in the reversal or unraveling of the Debtors' Plan. The Court disagrees with Appellant's argument for several reasons. First, Appellant's substantive argument rests on the premise that the valuation that the Bankruptcy Court based confirmation on is too low such that the Plan is not fair and equitable. If Appellant's argument is accepted as true, the Plan would not be fair and equitable for all of the Debtors' unsecured creditors, not just Appellant. Such a finding would doubtless result in the need to negotiate a new plan.

Second, the Plan in this case was consented to by all of the creditors except for Class G5 bondholders like Appellant. Class G5 creditors have allowed claims in the amount of $387 million. Appellant is a creditor holding $20 million of Genesis bonds. Under the Bankruptcy Code, creditors of the same class are to be treated in the same manner, unless they consent to receive less favorable treatment. 11 U.S.C. § 1123(a)(3)-(4); 11 U.S.C. § 1129(b)(1) (prohibiting unfair discrimination among creditors when plan is confirmed over objection of non-consenting creditors). The relief Appellant proposes, i.e. the issuance of additional shares to him, would be unfair to the other creditors in Appellant's own class, and thus, prohibited under the Bankruptcy Code.

Further, it is likely that those who agreed to the initial Plan would withdraw their support if new shares of stock were redistributed in the manner in which Appellant suggests. The original Plan was the result of several negotiations and compromises, including the agreement of the Senior Secured Lenders to accept less than the over $1.6 billion they were owed and to allow unsecured creditors to share in the recovery. The granting of Appellant's relief would likely topple the delicate balances and compromises struck by the Plan. Because the relief Appellant seeks would have an adverse impact on the success of the current Plan, the Court finds that this factor likewise weighs in favor of dismissing this appeal.

### E. *Finality Of Bankruptcy Judgments*

■ Although identified by the Third Circuit as a separate factor, the public policy favoring the finality of bankruptcy judgments has been described as "the lens through which the other equitable mootness factors should be viewed." *In re Zenith Elecs. Corp.*, 250 B.R. 207, 219 (D.Del.2000). The Court addressed this factor in its discussion of the rights of third parties not before the Court and the effect the Appellant's relief would have on the success of the Plan. Public policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies. This policy is furthered by the policy favoring finality of

bankruptcy judgments. When investors and other third parties can rely on a confirmed plans of reorganization and other bankruptcy judgments, they have the footing and confidence they need to pursue investments and business arrangements with the reorganized debtor, all of which foster the debtor's successful reorganization.

As the Court discussed previously, the relief Appellant seeks would adversely effect several third parties and unravel a substantially consummated reorganization plan, thereby undermining the finality of the Bankruptcy Court's Confirmation Order. Accordingly, the Court concludes that the public policy favoring the finality of judgments would be better served by the dismissal of the instant appeal.

## CONCLUSION

For the reasons discussed, the Court concludes that the relevant factors weigh in favor of dismissing the instant appeal on the grounds of equitable mootness. Accordingly, Appellee's Joint Motion To Dismiss The Appeal will be granted.