NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3084
_____

In re Nuverra Environmental Solutions, Inc., a/k/a Heckmann Corporation
a/k/a Rough Rider Escrow, Inc., et al.,
Debtor

David Hargreaves,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:17-cv-01024)
District Judge:  Hon. Richard G. Andrews
_____

Argued
November 17, 2020

Before: JORDAN, KRAUSE, and RESTREPO, *Circuit Judges*

(Filed: January 6, 2021)
_____

James H. Millar
Clay J. Pierce   [ARGUED]
Faegre Drinker Biddle & Reath
1177 Avenue of the Americas
41st Floor
New York, NY   10036
        *Counsel for Appellant*

Jamie L. Chapman
Kenneth J. Enos
Pauline K. Morgan
Young Conaway Stargatt & Taylor
1000 North King Street
Wilmington, DE   19801

Sara Coelho
Fredric Sosnick   [ARGUED]
Shearman & Sterling
599 Lexington Avenue
New York, NY   10022
        *Counsel for Appellees*

_____

OPINION*

_____

JORDAN, *Circuit Judge*.

David Hargreaves objected to the reorganization plan for Nuverra Environmental Solutions, Inc. and its affiliated reorganized debtors (collectively, the "Reorganized Debtors" or, prior to the effective date of their plan of reorganization, the "Debtors"), arguing that there was unfair discrimination between classes of creditors, but the District Court rejected his arguments when he appealed to that Court.  He now appeals to us.  We conclude that the District Court correctly determined that Hargreaves's appeal is equitably moot.  The relief he seeks, a personal payout, is disallowed by the Bankruptcy Code, and any other form of relief would require unwinding the confirmed plan.

_____

\* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

## I. BACKGROUND

This dispute arises out of the Debtors' reorganization plan (the "Plan") under Chapter 11 of the Bankruptcy Code. They petitioned for Chapter 11 relief on May 1, 2017 and proposed a prepackaged plan of reorganization. Following amendments, the Plan was filed on June 23, 2017. Certain secured creditors supported the Plan (the "Supporting Creditors"), holding 86% of the $356 million secured 2021 notes (the "2021 Secured Notes"), an $80 million term loan facility, and a $12.5 million post-petition debtor-in-possession ("DIP") credit facility. The Debtors' enterprise value at confirmation was approximately $302.5 million, while the total secured indebtedness was approximately $500 million. As ultimately negotiated, the Plan involved holders of the 2021 Secured Notes receiving equity, recovering up to approximately 54.5% on their secured claims, and losing $190 million in deficiency claims related to their notes. It also converted the Supporting Creditors' prepetition term loans and DIP credit facility into discounted equity.

On a more detailed level, the Plan consisted of three parts, with classes A1-12 associated with a joint plan for a subset of the Debtors, the "Nuverra Group Debtors," and classes B1-10 and C1-10 associated with individualized plans for two debtors, Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE).[1] Hargreaves is a member of Class A6, which includes holders of unsecured 2018 Notes issued by Nuverra Group Debtors in the amount of $40,436,000. Hargreaves holds $450,000 of

_____

[1] The "Nuverra Group Debtors" consist of 12 entities, which include all Debtors except Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE).

such notes.  The Plan provided A6 creditors with securities and cash equal to six percent of the face value of their notes.  Nearly 80% of voting Class A6 noteholders voted in favor of confirmation, but, by value of ownership stakes, 61% of Class A6 voted against confirmation.

In contrast to the treatment of Class A6, Class A7, which includes "certain trade and other creditors, whose debts arise out of the debtor's day to day operations, [] receive[d] payment in full."  (JA0085.)  The parties characterize this payment to Class A7 as a "gift" to be paid by secured creditors.  It is considered a gift because, as the Bankruptcy Court explained, the unsecured creditors "sit behind over $500 million dollars of secured debt in the company that has an uncontroverted value of approximately $300 million dollars[,]" but, "[a]s part of the negotiated plan, certain trade and other creditors … receiv[e] value that would, otherwise, inure to the benefit of the secured creditors who will own the debtors' post emergence."  (JA0085.)  The Bankruptcy Court approved of this "payment in full" because "the debtors clearly explain that separate classification is necessary to maintain ongoing business relationships that the debtors need to ensure the continuance of operations."  (JA0087.)

Hargreaves filed an objection to the Plan on the grounds that "it engages in improper classification of claims and unfair discrimination among claims of equal rank" (JA1345), and he asked that the Plan not be confirmed.  The Bankruptcy Court held a hearing to consider confirmation, at which point there was discussion of Class A7 receiving payment in full.  The Bankruptcy Court confirmed the Plan over Hargreaves's objection, holding that, "despite the disparate treatment between [C]lass A6 and other

unsecured creditors, there is no unfair discrimination here where the gift by secured creditors to other unsecured creditors constitutes no unfair discrimination as [C]lass A6 is indisputably out of the money and not, otherwise, entitled to any distribution under the Bankruptcy Code's priority scheme and provided further that the proposed classification and treatment of other unsecured creditors fosters a reorganization of these debtors." (JA0089-90.) The Bankruptcy Court further explained that the classification of the A7 claims was reasonable because those claims "aris[e] out of day-to-day operations of the companies." (JA0087.)

Several important things then happened in rapid succession: On July 25, 2017, the same day the Bankruptcy Court confirmed the Plan, Hargreaves filed his notice of appeal to the District Court; one day later, on July 26, 2017, Hargreaves filed an emergency motion for a stay of the Confirmation Order; on August 3, 2017, the District Court denied the stay request; and on August 7, 2017, the Debtors implemented the Plan. Some two months later, on October 16, 2017, the Reorganized Debtors filed a motion to dismiss Hargreaves's appeal for equitable mootness, arguing that the Plan was substantially consummated and could not practically be unwound. The District Court heard oral argument on May 14, 2018 and, ruling the appeal equitably moot, dismissed it on August 21, 2018.

Hargreaves had conceded before the District Court, as he does before us, that the Plan has been substantially consummated, as that concept is defined in 11 U.S.C.

§ 1101(2).[2] That meant the Plan could not be practically unwound, or, in other words, "the prudential factors weigh in favor of dismissal."[3] (JA0022 (citing *In re One2One Commc'ns, LLC*, 805 F.3d 428, 436 (3d Cir. 2015)).) Given that the Plan could not be unwound, the District Court turned to a consideration of whether Hargreaves's only proposed relief – full individual recovery – could be granted while leaving the plan in place. The Court decided that relief could not be granted because it "would result in disparate treatment of [his] claim as compared with all other bondholder claims in Class A6 – precisely the issue that predicates the appeal[.]" (JA0021-22.) It rejected the argument that Hargreaves repeats to us, that there is no disparate treatment because his fellow A6 creditors "ha[d] an equal opportunity to recover on their claims" (JA0022 (quoting D.I. 36 at 15, n.5)), if they had chosen to "object to the Plan and appeal the Confirmation Order" (Opening Br. at 52) as he did.

Hargreaves has timely appealed to us.

---

[2] "'[S]ubstantial consummation' means -- (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

[3] "[P]rudential considerations [] address concerns unique to bankruptcy proceedings. These concerns relate to the adverse effects of the unraveling of a confirmed plan that could result from allowing the appeal to proceed. The equitable mootness doctrine recognizes that if a successful appeal would be fatal to a plan, prudence may require the appeal be dismissed because granting relief to the appellant would lead to a perverse outcome." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 168 (3d Cir. 2012) (internal citations and quotation marks omitted).

## II.    DISCUSSION[4]

Hargreaves contends that the Plan unfairly discriminates against the class of creditors into which he falls and that his requested relief does not render the appeal equitably moot. He believes that he should receive an individual $450,000 payout, equal to a 100% recovery on his Class A6 claim, to remedy the allegedly unfair discrimination of the Plan against the entirety of Class A6. The Reorganized Debtors respond that such relief would be contrary to the Code, and that any relief Hargreaves could seek is practically impossible, leaving his appeal equitably moot. The Reorganized Debtors have it right. The District Court appropriately, and within its discretion, rejected Hargreaves's arguments.[5]

We have described equitable mootness as "a narrow doctrine[, distinct from constitutional mootness,] by which an appellate court deems it prudent for practical reasons to forbear deciding an appeal when to grant the relief requested will undermine the finality and reliability of consummated plans of reorganization." *In re Tribune*

---

[4]  We have jurisdiction over this appeal under 28 U.S.C. §§ 158(d) and 1291. We exercise plenary review of the District Court's conclusions of law, including its interpretation of the Bankruptcy Code. *See In re Goody's Family Clothing Inc.*, 610 F.3d 812, 816 (3d Cir. 2010). "We review the Court's equitable mootness determination for abuse of discretion." *In re Tribune Media Co.*, 799 F.3d 272, 278 (3d Cir. 2015) ("*Tribune I*").

[5] The District Court also rejected Hargreaves's appeal as equitably moot because, as a practical matter, "it is unclear which party the Court may order to fund such a recovery[,]" as the payment to A7 was a gift from the secured creditors. (JA0059.) Hargreaves claims that the original gifted distributions were funded by the collective, so his relief could come from the Reorganized Debtor. We do not reach that issue because an individualized payout is not permitted in any event.

7

*Media Co.*, 799 F.3d 272, 277 (3d Cir. 2015) ("*Tribune I*"). There is a "strong presumption that appeals from confirmation orders of reorganization plans … need to be decided[,]" *id.* at 278, and "a court may fashion whatever relief is practicable instead of declining review simply because full relief is not available" *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 425 (5th Cir. 2010). We have described the analytical steps under the doctrine as asking: "(1) whether a confirmed plan has been substantially consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation." *Tribune I*, 799 F.3d at 278 (citing *In re SemCrude, L.P.*, 728 F.3d 314, 321 (3d Cir. 2013)). The third-party analysis is particularly focused on equity investors, but can also include, to a lesser extent, lenders, customers, suppliers, and other creditors. *See SemCrude*, 728 F.3d at 325; *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 171 (3d Cir. 2012); *In re Cont'l Airlines*, 91 F.3d 553, 562 (3d Cir. 1996). "The theme is that the third parties with interests protected by equitable mootness generally rely on the emergence of a reorganized entity from court supervision." *Tribune I*, 799 F.3d at 280.

Here, the contending parties frankly state, and we agree, that the Plan has been substantially consummated under part one of the equitable mootness test. There also appears to be agreement under part two that the only relief that might not fatally scramble the Plan would be an individual payout of a relatively small sum, like the $450,000 that Hargreaves seeks. The question thus becomes whether such relief is permitted by the Bankruptcy Code, and the short answer is it is not.

8

As the Reorganized Debtors rightly note, awarding such relief would violate the Code's restriction on preferring certain individuals over others in the same class. Under 11 U.S.C. § 1123(a)(4), a reorganization plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment[.]" Awarding the relief Hargreaves wants would also contravene the purpose of the unfair discrimination provision, 11 U.S.C. § 1129(b)(1), which "applies only to classes of creditors[, ]not the individual creditors that comprise them[.]" *In re Tribune Co.*, 972 F.3d 228, 242 (3d Cir. 2020) ("*Tribune II*"); *see also In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013) ("[E]quality of distribution among creditors is a central policy of the Bankruptcy Code that is furthered by several different Code provisions." (internal quotation marks and citations omitted)).

Hargreaves's first response to the problems with his proposed relief is to dwell on an irrelevancy. He emphasizes how small the sum he wants is, relative to the Reorganized Debtors' value, saying that "[f]ull payment of his claim would represent approximately 0.45% of the Debtors' estimated $173 million enterprise value." (Opening Br. at 49-50.) And he relies on cases in which we have held that awarding of a small percentage of a company's value would not fatally scramble a plan. *See In re SemCrude, L.P.*, 728 F.3d at 324; *In re Phila. Newspapers, LLC*, 690 F.3d at 170-71; *In re Cont'l Airlines*, 203 F.3d 203, 210 (3d Cir. 2000). Along the same lines, he argues that no third party would be injured because he is asking for so little. But his arguments miss the mark: they do not address the problem of one creditor receiving more than the other

9

creditors in the same class.  The size of his request is simply beside the point; it ignores

that such an individual payout to one member of a class is not permitted by the Code.

Hargreaves tries to get around that problem by saying his receiving more than

other A6 creditors would not violate the principle that like creditors must be treated alike

because the other A6 creditors "had an equal opportunity to object to the Plan and appeal

the Confirmation Order" but chose not to.[6]  (Opening Br. at 52 (citing *In re Dana Corp.*,

412 B.R. 53, 62 (S.D.N.Y. 2008); *In re W.R. Grace & Co.*, 729 F.3d at 327 (citing *In re*

*Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 749 (2d Cir. 1992), *modified on reh'g*,

993 F.2d 7 (2d Cir. 1993))).)  That "equal opportunity" argument is unavailing, since

§ 1129(b)(1) (restricting unfair discrimination against classes of creditors) and

§ 1123(a)(4) (requiring equal treatment within classes of creditors) of the Code

effectively prohibit payouts to a creditor who seeks an individual benefit in derogation of

the treatment accorded other class members.  We recently noted this very principle when

we said "that unfair discrimination applies only to classes of creditors (*not the individual*

*creditors that comprise them*), and then only to classes that dissent.  Thus, a disapproving

---

[6] He relies on *In re SemCrude, L.P.*, where we allowed the appellant objectors to pursue relief on appeal while others who had not initially objected could not pursue the same relief.  *See* 728 F.3d at 324.  Our *SemCrude* decision, however, has no bearing on this case because *SemCrude* involved claims of certain "statutory lien rights" in property, which claims, if successful, might have resulted in the applicants being effectively assigned to a different class.  *Id.* at 318.  They could not, however, become entitled to a higher return than other creditors in the same class.  Such a result would not comply with Section 1123 of the Code.  *See In re W.R. Grace & Co.*, 729 F.3d at 327 (describing Section 1123 equal opportunity as not requiring "precise equality," and providing the example of asbestos health claimants being "paid whatever amounts the jury awarded, until funds were no longer available" (citations omitted)).

creditor within a class that approves a plan cannot claim unfair discrimination, and the standard does not 'apply directly with respect to other classes unless they too have dissented.'" *Tribune II*, 972 F.3d at 242 (emphasis added) (citation omitted); *see also In re Genesis Health Ventures, Inc.,* 280 B.R. 339, 346 (D. Del. 2002). That statement makes clear that the sole relief an objecting party can pursue when alleging unfair discrimination is relief for the class of creditors unfairly discriminated against, consistent with 11 U.S.C. § 1123(a)(4).

To be clear, Hargreaves's class did not vote to accept the Plan (and thus it may be deemed to have dissented, though it fell just short of the required votes for approval), so Hargreaves was free to object to the Plan on unfair discrimination grounds. What he could not properly do is propose that the appropriate remedy is to pay only him and no one else in his class. He never asked for individualized relief before the Bankruptcy Court. Nor could he have at the confirmation hearing, because § 1123(a)(4) bars individualized treatment. If we agreed with Hargreaves, we would effectively be encouraging litigants to take one position in bankruptcy court and an inconsistent position later on appeal.[7]

---

[7] In his Reply, Hargreaves appears to suggest that the Bankruptcy Code's restrictions, including Section 1123(a)(4), only govern the confirmation process, not our fashioning of relief after the fact. [Reply Br. at 4-6.] That argument is unsupported and unpersuasive. Our concurring-in-the-judgment colleague contends that we are "assum[ing] that Hargreaves's request for individualized relief conflicts with the Bankruptcy Code, leaving the only relief available class-wide relief that may, indeed, scramble the plan." (Concur. op. at 2.) But we are not assuming anything; we are recognizing a fundamental problem with the position that Hargreaves has advanced. Our job is to decide cases and controversies in which we can offer a measure of lawful relief. *See In re Pub. Serv. Co. of New Hampshire*, 963 F.2d 469, 471 (1st Cir. 1992)

## III. CONCLUSION

As the only way to give Hargreaves the money he wants is to give all A6 creditors a 100% refund on their $40.4 million in unsecured 2018 notes, which would fatally scramble the Plan and significantly harm third parties, his claim must fail.[8] His appeal is

("Mootness in bankruptcy appellate proceedings, as elsewhere, is premised on jurisdictional and equitable considerations stemming from the impracticability of fashioning fair and effective judicial relief.  Jurisdictional concerns may arise from the constitutional limitations imposed on the exercise of Article III judicial power in circumstances where no effective remedy can be provided[.]" (internal citations omitted)); *see also Bank Rhode Island v. Pawtuxet Valley Prescription & Surgical Ctr., Inc.*, 386 B.R. 1, 2 (D.R.I. 2008) (noting the "narrow exception for claims that are 'capable of repetition [by the parties in-suit] yet evading review.'" (quoting *Horizon Bank & Trust Co. v. Massachusetts,* 391 F.3d 48, 54 (1st Cir. 2004))).  Here we cannot offer any such relief, and that concludes the matter.

Our colleague's further concern that we are "making our authority to address bankruptcy questions contingent on whether a lower court issues a stay" is likewise one that we do not share.  (Concur. op. at 3 n.1.)  Rulings of the bankruptcy court are subject to immediate review in district court.  *See* Fed. R. Bankr. P. 8007 (authorizing stay requests to the district court assuming such relief was first requested of the bankruptcy court or a request to the bankruptcy court would be impractical); *In re Nuverra Envtl. Sols., Inc.*, No. 17-10949, 2017 WL 3326453, at *4 (D. Del. Aug. 3, 2017) (denying Hargreaves's motion for a stay of the confirmation order pending appeal).  And while we have not spoken directly to the issue, if a district court's decision on a stay motion would have the practical effect of ending a case, our precedents indicate that an immediate appeal could be brought to us.  *See, e.g., In re Revel AC, Inc.*, 802 F.3d 558, 567 (3d Cir. 2015) ("finality must be viewed more pragmatically in bankruptcy appeals under § 158(d) than in other contexts" (quoting *In re Trans World Airlines, Inc.*, 18 F.3d 208, 215 (3d Cir. 1994)));  *United States v. Nicolet, Inc.*, 857 F.2d 202, 205 (3d Cir. 1988) ("We have found a pragmatic and less technical approach to finality to be more appropriate in bankruptcy proceedings[.]"); *In re Comer*, 716 F.2d 168, 171 (3d Cir. 1983) (holding a district court's lifting of a stay was a final decision because "effective review of the order lifting the stay cannot await final disposition of the case in the bankruptcy court").  That route to review is a fair and appropriate one, given the manifold interests in play in complex bankruptcy cases like this.

[8] Hargreaves estimates that the Reorganized Debtors' enterprise value is $173 million.  This means that Class A6's $40.4 million in 2018 Notes would withdraw 23.3% of the Reorganized Debtors' value.

12

equitably moot, and the District Court properly exercised its discretion to deny it on that basis.

KRAUSE, *Circuit Judge*, concurring.

I have previously warned that our equitable mootness doctrine is "legally ungrounded and practically unadministrable," and I have urged my colleagues to "reconsider whether it should exist at all." *In re One2One Commc'ns, LLC*, 805 F.3d 428, 438 (3d Cir. 2015) (Krause, J., concurring). Although I continue to question the doctrine's wisdom, I write today not to reiterate my longstanding concerns, but to call attention to the consequences of our ill-advised expansion of the doctrine, as exemplified in this case. Even in decisions embracing equitable mootness, we have been careful to describe it as a "narrow" doctrine that is more akin to "a scalpel . . . than an axe." *In re Tribune Media Co.*, 799 F.3d 272, 277–78 (3d Cir. 2015). But in practice, as today, it is wielded with anything but surgical precision.

What undergirds our equitable mootness jurisprudence is the premise that granting post-confirmation relief sometimes threatens to "fatally scramble [a reorganization] plan" or "significantly harm the interests of third parties who have justifiably relied on plan confirmation." *Id.* at 278. In this case, however, Hargreaves requests a form of relief—individualized payment—that implicates neither of those concerns. In other words, if the District Court were to award Hargreaves the compensation he seeks, that would not endanger the reorganized debtors' solvency or unwind other aspects of the Plan. That should end our equitable mootness inquiry and require us, in the normal course, to analyze the merits of Hargreaves's claims.

Too often, however, we and other courts have allowed the doctrine itself to short-circuit the merits analysis, and this case is illustrative. In declaring this case moot, the

Majority assumes that Hargreaves's request for individualized relief conflicts with the Bankruptcy Code, leaving the only relief available class-wide relief that may, indeed, scramble the plan. *See* 11 U.S.C. § 1123(a)(4). Central to that assumption, however, is the first of many merits questions that we gloss over in the name of "equitable mootness." After all, the availability of individualized relief for unfair discrimination is not a mootness issue; it's a merits determination that depends on our construction of the Code. And it's not at all clear that the Code precludes individualized relief in this situation.

The Majority is correct that the Code mandates "the same treatment for each claim or interest of a particular class," *id.*, but it imposes that requirement only when "the holder of a particular claim or interest" will not "agree[ ] to a less favorable treatment," *id*. And by declining to object to the Plan, the rest of Hargreaves's class arguably did "agree[ ]" to receive less than him. *Id*; *cf. Agree*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/agree ("[T]o consent to."). Hargreaves also has a colorable argument that, by failing to appeal, the rest of the class waived the unfair discrimination claim, while he preserved it. So rather than leapfrogging these issues, I would exercise our jurisdiction and afford them the careful consideration they deserve. *See Tribune*, 799 F.3d at 278 (instructing courts to "fashion whatever relief is practicable instead of declining review simply because full relief is not available").

By instead vaulting ahead and assuming the answer to the question of individualized relief, the Majority precludes the development of bankruptcy law not only as to the remedies available under § 1123(a)(4), but also as to other merits questions we would then need to reach. For example, Hargreaves's appeal implicates a series of open issues around

2

the nature of unfair discrimination under § 1129(b)(1): Does the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), foreclose preferential treatment of a sub-class through horizontal gifting? Is the unfair discrimination test focused on a plan's results or the process that produced those results? And what are the limits on a plan's ability to divide creditors into classes? If unfair discrimination claims—like the one at issue here—must be brought as a class, and if awarding class-wide relief generally requires us to scramble a plan, the invocation of equitable mootness may prevent us from ever weighing in on these questions.[1]

With yet another case, this problematic doctrine has lured us into abdicating our jurisdiction when we should be exercising it, and "stunt[ing] the development" of our bankruptcy jurisprudence when it's our duty to promote it. *One2One Commc'ns*, 805 F.3d at 447. Because I would confine equitable mootness to the narrow role envisioned by our precedents, reach the merits questioned outlined above, and ultimately resolve this appeal in favor of the reorganized debtors, I respectfully dissent.

---

[1] To be clear, these questions might reach us if a bankruptcy court stays implementation of a plan pending appeal. But, as I have previously explained, making our authority to address bankruptcy questions contingent on whether a lower court issues a stay raises serious constitutional and practical concerns. *See One2One Commc'ns*, 805 F.3d at 445 (cataloging the dangers of allowing lower courts to "insulate their decisions from review"). And, although today's opinion states that a bankruptcy court's decision declining a stay is appealable to a district court, and then "subject to immediate appeal to us," our authority to review stay denials is more tenuous than the Majority admits. *See* Maj. Op. at 12 n.7 (citing *In re Revel AC, Inc.*, 802 F.3d 558, 566 (3d Cir. 2015)). Indeed, far from confirming that "we have jurisdiction to review a stay denial where the underlying appeal could become equitably moot," the case relied on by the Majority expressly left that question "for another day." *In re Revel AC*, 802 F.3d at 567.